**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**DOLOMITE PRODUCTS COMPANY, INC.**

           **Plaintiff,**

v.                   1:15-CV-917

**TOWN OF BALLSTON, NEW YORK,
TOWN BOARD OF THE TOWN OF
BALLSTON, NEW YORK, and WILLIAM
GOSLIN, Individually and in his capacity as
Town of Ballston Board Member,**

           **Defendants.**
_____

**Thomas J. McAvoy, S.U.S.D.J.**

### DECISION & ORDER

Before the Court is Defendants' motion to dismiss this civil rights action, which alleges Defendants violated Plaintiff's rights regarding development plans in the Town of Ballston, New York. See dkt. # 10. The parties have briefed the issues and the Court has determined to resolve them without oral argument.

**I. Background**

This case involves claims by Plaintiff Dolomite Products Company, Inc. ("Dolomite"), that the Defendants used improper, discriminatory and unconstitutional means to thwart Plaintiff's efforts to construct a hot mix asphalt plant in the Curtis Industrial Park ("CIP") in the Town of Ballston, New York. Plaintiff alleges that Defendants discriminated against Dolomite by: applying different standards to Dolomite's project than to other projects proposed by similarly situated businesses; deliberately prolonging the processing of Dolomite's site plan application before the Town of Ballston Planning Board;

1

enacting an ordinance designed to delay, hinder and prevent Dolomite's project, and then lying about the purpose of the ordinance; refusing, in bad faith, to process Dolomite's site plan application; refusing to withdraw the ordinance, despite publically acknowledging its defects, and instead forcing Dolomite to litigate the issue in the Saratoga County Supreme Court; purposefully delaying processing the site plan after the Supreme Court struck down the ordinance; and by passing a new ordinance that repeated the same problems as the earlier one. Complaint, dkt. # 1 ("Comptl."), at ¶ 26.

Plaintiff's Complaint, filed on July 27, 2015, raises five causes of action. Plaintiff brings four causes of action pursuant to 42 U.S.C. § 1983 and the fifth seeks declaratory judgment. The first cause of action, raised against the Town Defendants, alleges that the Town Defendants' actions that prevented processing and approval of Dolomite's site plan application violated the Plaintiff's substantive due process rights. The second cause of action alleges that Defendant William Goslin, acting in his individual capacity, violated Plaintiff's substantive due process rights through his efforts to delay Dolomite's application and pass ordinances preventing adoption of the proposed plan. The third claim alleges that Defendants violated Plaintiff's constitutional right to equal protection. The fourth cause of action alleges that Defendants conspired to violate Plaintiff's constitutional rights. The fifth cause of action seeks a declaratory judgment "that the development of Dolomite's premises for its asphalt plant project shall be pursuant to the Zoning Code, Town Comprehensive Plan and other regulations regarding property development as they existed the day that" the local ordinance, "which had been judicially nullified due to notice defects, was enacted." Complt. at ¶ 279.

After Plaintiff served Defendants with the Complaint, they filed the instant motion to dismiss. The parties then briefed the issues, bringing the case to its present posture.

2

## II. Analysis

### A. Legal Standards

Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. As Rule 12(b)(1) is determinative here, the Court will address only the standards under that Rule.

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a claim for "lack of subject matter jurisdiction." FED. R. CIV. P. 12(b)(1). In resolving such a motion, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." Raila v. United States, 255 F.3d 118, 119 (2d Cir. 2004). A court may dismiss an action only when "it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief." Id. When a party moves to dismiss a claim on Rule 12(b)(1) and other grounds, the Court is to "consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'" Rhulen Agency v. Alabama Ins. Guaranty Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (quoting 5 C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1350, p. 548 (1969)).

### B. Defendants' Motion

Defendants move for dismissal on various grounds. As ripeness is jurisdictional and here dispositive, the Court will confine its analysis to that issue.

#### 1. Ripeness

The Court must first consider Defendants' argument that Plaintiff's claims are not ripe, as "the 'ripeness doctrine is drawn both from Article II limitations on judicial

3

responsibility and from prudential reasons for refusing to exercise jurisdiction[.]'" Thomas v. City of New York, 143 F.3d 31, 34 (2d Cir. 1998) (quoting Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 58 n.18 (1993)). "Ripeness is a jurisdictional inquiry." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005). "Constitutional ripeness . . . prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." Simmonds v. I.N.S., 326 F.3d 351, 357 (2d Cir. 2003). To satisfy this jurisdictional requirement, a party must at minimum show "the existence of a live 'Case or Controversy,' [a] conclusion that [the complaining party] will sustain immediate injury . . . and that such injury will be redressed by the relief requested[.]" Id. (quoting Duke Power Co. v. Carolina Envtl. Study Group,, 438 U.S. 59, 81 (1978)). Prudential ripeness applies when a court decides that "'the case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay.'" Id. (emphasis in the original). Courts employ that doctrine "to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial." Id.

In the zoning context, the proponent of jurisdiction must show that the court can "look to a final, definitive position from a local authority to assess precisely how they can use their property." Murphy, 402 F.3d at 347. This rule applies to constitutional takings claims, but has also been "extended to equal protection and due process claims in the context of land use challenges." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002). A plaintiff must meet a two part test, demonstrating that (1) the state regulatory entity has rendered a 'final decision' on the matter, and (2) the plaintiff has sought just compensation by means of an available state

4

procedure." Id. A plaintiff who fails to seek a variance from a zoning rule has "not received a 'final, definitive' decision regarding how the commission 'will apply the regulations at issue to the particular land in question.'" Id. (quoting Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 191 (1985)).

Plaintiff's Complaint alleges that the action seeks "redress for past and on-going pervasive and concerted government-sponsored disparate treatment and other civil rights violations[.]" Complt. at ¶ 1. Plaintiff's injuries, the Complaint contends, came because Defendants failed to make their "[z]oning and planning decisions . . . on a level playing field-which field is described and expressed in a comprehensive plan[.]" Id. at ¶ 7. Asphalt production had been permitted in the CIP since at least 1985, and confirmed at a revision of the plan in 2006. Id. at ¶ 11. Since the time when Dolomite first began developing its plan to build an asphalt plant, Defendants allegedly subjected Plaintiff to repeated "arbitrary and capricious conduct by officials of the Town who have abused their authority and allowed a vocal minority and "petty prejudices" to stand in the way of the project. Id. at ¶ 15. This activity has all occurred because the Town does not want Dolomite to build the asphalt facility. id. at ¶ 16.

The Complaint alleges facts about the project Dolomite intended to build. In May, 2011, Plaintiff, "recognizing that the Town had carefully and thoroughly considered the propriety of allowing the manufacturing of blacktop in" the CIP, entered into a twenty-year lease agreement for ten acres in that industrial park. Id. at ¶ 57. On June 6, 2011, Dolomite submitted an application to the Town Planning Board for approval of its plans to build a blacktop plant in the CIP. Id. at ¶ 78. The Board referred Dolomite's site plan to the Saratoga County Planning Board, which determined that the matter was local and returned the plan to the Town Board. Id. at ¶¶ 79-80. The Town Planning Board reviewed

5

the application, but did not approve or reject it. Id. at ¶¶ 81-86. The Town Board, allegedly out of a desire to prevent an approval of the project and despite the fact that the blacktop plant was an expressly permitted use, issued a decision that required Dolomite to produce an environmental impact statement. Id. at ¶¶ 95-96.

The parties then engaged in a long series of disputes regarding the propriety and legal standing of amendments to the Town's zoning ordinances, which resulted in state-court decisions overturning and enjoining ordinances the Town passed. Id. at ¶¶ 97-121, 127-158. During that time, the Planning Board also demanded further revisions to the environmental impact statement. Id. at ¶¶ 122-126. Dolomite, recognizing Defendants' deliberate delays and attempts to derail the project, on July 9, 2014 requested that the Planning Board resume processing its site plan application, accepte the draft environmental impact statement as complete, and begin a public comment period. Id. at ¶ 160. The Planning Board did not do so, and Town officials instead requested further revisions to the environmental impact statement. Id. at ¶¶ 161-163, 165. Even after Dolomite made revisions that addressed all of the Town's concerns, the Board still refused to accept the environmental impact statement. Id. at ¶ 127. On September 14, 2014, the board accepted the draft environmental impact statement and set a hearing date. Id. at ¶ 173.

At that point, litigation surrounding the second ordinance interrupted the proceedings. Id. at ¶¶ 176-182. In the end, the State Supreme Court on November 13, 2014, issued an order holding that:

> From the date of this Order until further Order of this Court and pending the determination of Petitioner's request for a Preliminary Injunction, Defendants-Respondents and all other persons and entities, known or unknown, acting under them, including their delegated boards, and their successors in either their elected or appointed capacities are hereby enjoined from enforcing or applying [the second

6

ordinance] to Plaintiff-Petitioner's application to construct its proposed asphalt plant in the Curtis Industrial Park in the Town of Ballston, which processing shall continue unabated and unaffected by [the second ordinance] as of the date of this Order.

Id. at ¶ 182. Plaintiff, "[r]ecognizing the time and expense of litigation, as well as the merry-go-round nature of having to challenge and nullify the Town's illegal enactments in order to move its application forward only to have the Town enact the next roadblock," then decided to recast its application in another way in an attempt to obtain approval. Id. at ¶ 183. Latching onto a statement from the Town that "uses in the CIP were not actually uses, as that term is commonly known, but were rather 'improvements,'" the Plaintiff "sought to proceed" under that finding. Id. at ¶ 186. The Town rejected this argument, finding that "all 'uses' in the CIP must be permitted and appear in the use table contained in the Zoning Law." Id. at ¶ 187. The Town's Zoning Appeals Board also rejected this argument. Id. at ¶ 201.

Plaintiff describes the culpable conduct of the Defendants in the following way:

(i) discriminating against Dolomite's lawful project, refusing to apply the same longstanding standards to the Dolomite project as were applied to other similarly situated businesses within the CIP and, instead, selectively singling out Dolomite's project and treating it in a disparate manner from the other business located in the CIP, (ii) repeatedly extending, dilatorily, in bad faith and with malicious intent, the processing of Dolomite's site plan application before the Town of Ballston Planning Board ("Planning Board") with the sole aim of delaying processing to permit the adoption [of the first ordinance]; enacting [the first ordinance] with the sole intent of delaying, hindering and preventing Dolomite's project, despite (a) repetitive bad faith statements by Town Board officials indicating that said law would not apply to Dolomite's proposed project and (b) Defendants' awareness that the law was, pre-adoption, materially defective as evidence by the public statements of the Town Supervisor; (iv) halting, dilatorily, in bad faith and maliciously, the process of Dolomite's site plan application, ostensibly as a result of the enactment of [the ordinance], but in advance of that law's statutory effective date; (v) frivolously and maliciously refusing in bad faith to withdraw [the first ordinance], despite Defendants' public recognition of its facial and material defects, demanding instead that the Saratoga Supreme Court judicially nullify said [first ordinance] in order to prevent and delay Dolomite's lawful project; (vi) demanding, subsequent to the judicial nullification of [the first ordinance], dilatorily, in bad faith and maliciously,

7

> that processing of Dolomite's sit eplan application be delayed while *de minimus* information was demanded from, and supplied by, Dolomite in order that Dolomite's long-pending project would be further delayed, hindered and prevented while the Town prepared to enact [the second ordinance]; and (vii) adopting [the second ordinance], a virtual reenactment of [the first], suffering from the same substantive, and even greater notice, defects than its predecessor, for the sole malicious and bad faith purpose of hindering, delaying and preventing Dolomite's lawful project, and injuring Dolomite.

Id. at ¶ 26. In essence, Plaintiff alleges that the Defendants opposed the construction of a business that was legal under the Town's current zoning plan, and took a number of steps which violated local laws and rules in an attempt to prevent the construction of that project. As a result, Plaintiff has been unable to build the project, and claims damages therefrom.

The Court finds that these allegations, accepted as true, indicate that the case is not ripe for disposition using the standards for zoning cases cited above. First, the allegations in the Complaint indicate that Dolomite filed an application for a permit to construct an asphalt plant in the CIP. All of Plaintiff's alleged injuries flow from the Town's failure to approve the plan. Nothing in the Complaint, however, indicates that the Town Zoning Board, much less the Zoning Appeals Board, has ever ruled on that application. Though Plaintiff offers voluminous allegations contending that Town Officials acted in bad faith, Plaintiff does not allege that the initial application has ever been withdrawn or rejected. Indeed, the state-court decision that established a restraining order against an ordinance which Plaintiff cites as evidence of Defendants' chicanery, specifically directs the Town to continue processing the application. Though Plaintiff asserts that it tried another tactic for approval of the project, which was rejected, nothing in the Complaint indicates that those efforts marked Plaintiff's abandonment of the initial application or that an appeal of the initial denial has been completed.

In essence, Plaintiff here attempts to bring a series of constitutional claims based on Defendants' alleged failure to approve Dolomite's site plan. Plaintiff has not, however, completed the application process. While Dolomite is convinced that the game is rigged to prevent approval of the plan, Plaintiff admits in the Complaint that the approval process is still ongoing. Approval of the plan would vitiate Plaintiff's claims, and the Court will not expend judicial resources on a matter than may in the end be moot. This "'case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay.'" Simmonds, 326 F.3d at 357.

Citing to non-binding precedent from other circuits and districts, Plaintiff argues that when a plaintiff alleges intentional and improper delay, as opposed to challenging an adverse decision, that plaintiff need not demonstrate a final decision to bring a Section 1983 claim based on a zoning decision. Moreover, Plaintiff contends that Defendants misstate the nature of the relief they seek; Plaintiff does not seek damages for the injuries caused by Defendants' current refusal to permit Dolomite's project, but instead seeks damages for injuries caused by Defendants' earlier intentional and improper delay of the project.

The Court is unpersuaded by this argument. The law in this circuit is clear that a case involving a zoning decision is not ripe until a final and definitive decision on the project in question is issued by the agency in question. Plaintiff admits that no such decision has been issued. Moreover, at least part of the delays in this case seem attributable to litigation initiated by the Plaintiff in seeking to overturn ordinances rather than by demanding a final decision on Dolomite's plans for an asphalt plant. In any case, any damages that Plaintiff might claim from the delays are dependent on the ultimate

9

outcome of the zoning process; Plaintiff's damages would certainly be less if the plant eventually obtains a permit. Thus, as a prudential matter, there is no reason to press forward with the case now.

The Court will therefore grant the motion as it pertains to ripeness. Courts have found that the ripeness doctrine pertains to equal protection and due process claims, which are Plaintiff's constitutional claims as expressed in the various counts. Plaintiff also seeks a declaratory judgment, which would require that the Court reach the constitutional claims. As those claims are not ripe, the Court will also dismiss the declaratory judgment cause of action. As granting the motion on this basis disposes of the Plaintiff's entire Complaint, the Court will decline to address the other grounds Defendants raise.

### III. Conclusion

For the reasons stated above, Defendants' motion to dismiss, dkt. # 10, is hereby GRANTED.

**IT IS SO ORDERED**.

Dated: September 27, 2016

_____
Thomas J. McAvoy
Senior, U.S. District Judge